IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIDWEST BIOMEDICAL RESOURCES, INC., an Illinois corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) No.  21 C 954 |
| v. | )<br>) |
| | ) Judge Ronald A. Guzmán |
| BREAS MEDICAL, INC., a Delaware corporation, | )<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Defendant's motion to transfer this case to the United States District Court for the District of Massachusetts is granted for the reasons explained below.

**BACKGROUND**

Midwest Biomedical Resources, Inc. ("Midwest") filed suit in the Circuit Court of Will County against Breas Medical, Inc. ("Breas"), claiming breach of an oral contract allegedly entered into on March 10, 2020, and statutory and common-law fraud, and seeking a declaratory judgment that a subsequent written agreement between the parties is invalid and unenforceable. Breas removed the action to this court on the basis of diversity jurisdiction and now moves to transfer the action to the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 1404(a) and a forum-selection clause in the written agreement.

**DISCUSSION**

Midwest, an Illinois corporation with a principal place of business in Illinois, sells medical supplies, including ventilators.  Breas, a Delaware corporation with a principal place of business in Massachusetts, manufactures medical supplies, including ventilators.  In early March 2020, due to the severity of the COVID-19 outbreak in New York, New York's General Services Administration ("New York") requested a price quotation from Midwest for a purchase of ventilators. (ECF No. 1-2, Compl. ¶ 22.) Midwest, which had purchased ventilators from Breas during the previous five years, contacted Breas about purchasing ventilators.  Midwest alleges that it entered into an oral agreement with Breas on March 10, 2020 for Midwest's purchase of 2,400 ventilators from Breas, at a price of $4,500.00 per ventilator, with delivery of 150 ventilators per week beginning the week of March 24, 2020.  (*Id.* ¶ 30.)  Midwest says that Breas thereafter sent Midwest a "quotation" on March 16, 2020, for 44 ventilators that it had in stock, for the same price.  (*Id.* ¶ 35.)  Midwest then entered into arrangements with New York to sell

ventilators to New York. Midwest says that on March 18, 2020, Breas "orally notified" Midwest that it had already sold the ventilators it had in its inventory, "it was unilaterally increasing the parties' agreed-upon price for the Ventilators, from $4,500 to $5,900 per Ventilator," and "it would not perform under the parties' agreement, and [would] unilaterally cancel their agreement." (*Id.* ¶¶ 40-41.) Breas subsequently "refused to live by" the March 10 agreement and instead "requir[ed]" Midwest "to execute a purported 'distribution agreement,' under financial duress, which purported to permit Breas to deliver the Ventilators on its own schedule and not as the parties agreed, and to otherwise materially alter the parties' agreement." (*Id.* ¶¶ 5, 43.) Midwest seeks to enforce the March 10 oral agreement and to invalidate the written agreement. It alleges that Breas failed to deliver thousands of ventilators, causing Midwest substantial damages. Breas's position, however, is that the written agreement is valid and enforceable and that there was no prior oral agreement. Breas alleges that it discovered that Midwest was not reselling Breas's ventilators to New York, but rather to a private company in Kentucky, and it further alleges that Midwest failed to pay for "substantial quantities" of ventilators. (ECF No. 13, Countercl. ¶¶ 12, 23.) Breas asserts several counterclaims that include breach of the written agreement.

Breas's motion to transfer this action is based on a forum-selection clause in the written agreement. Breas attaches a fully-executed copy of the agreement, titled "Agreement," as Exhibit A to the memorandum in support of its motion.[1] Section 27 of the Agreement contains the following provision mandating that suits be brought in state or federal court in Massachusetts:

> Any suit, action or proceeding by any Party that arises under or in any way relates to this Agreement or the transactions contemplated hereby may be brought only in the state courts of the Commonwealth of Massachusetts or the United States District Court for the District of Massachusetts, Boston Division, and shall be tried only by a court and not by a jury. Each party hereby consents to the jurisdiction of such courts to decide any and all such suits, actions and proceedings and to such venue, and they hereby expressly waive any right to trial by jury in any and all such suits, actions and proceedings.

(ECF No. 11-1, Agreement at 9, § 27.2.)

A forum-selection clause may be enforced through a motion to transfer under § 1404(a). *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49, 59 (2013). "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63. When a federal court sitting in diversity evaluates the validity of a forum-selection clause in the context of a motion to transfer venue under 28 U.S.C. § 1404(a) or another federal

---

[1] An unexecuted copy of the Agreement, with several pages out of order, is attached to Midwest's complaint as Exhibit 12.

statute, the Court applies federal law.[2] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988); *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 608 (7th Cir. 2006). Under federal law, a forum-selection clause is presumed to be valid, and to overcome this presumption, the resisting party must show that the clause is "unreasonable under the circumstances." *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 159-60 (7th Cir. 1993). A clause is unreasonable if its incorporation into the contract was the result of fraud, undue influence, or overwhelming bargaining power, if the selected forum is so gravely inconvenient that the resisting party will be, for practical purposes, deprived of its day in court, or if enforcement of the clause would contravene a strong public policy of the forum. *Id.* at 160. Courts construe this exception narrowly. *Id.*

In response to Breas's motion, Midwest opens its discussion with principles of contract modification under the Uniform Commercial Code, on the presumption that the March 2020 oral contract is enforceable. It does not engage in any analysis whatsoever of the forum-selection clause independently, despite the fact that Breas devotes several pages of its motion to the proposition that the forum-selection clause itself is valid and enforceable. Midwest's approach puts the cart before the horse. *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (stating that it would be an "absurdity" for a court to be required to determine the validity of an entire contract before determining the proper forum for such a determination). Midwest does not dispute that it entered into the Agreement that contains the forum-selection clause. It argues, rather, that the Agreement in its entirety is invalid. Midwest says that Breas used "strong-arm tactics" and "placed [Midwest] over a barrel," because Midwest had no option but to rely on Breas to supply ventilators so that Midwest could, in turn, supply New York. (ECF No. 14, Pl.'s Resp. at 8-9.) Midwest further argues that it "executed the distribution agreement . . . under economic duress knowingly caused by Breas, and due to Breas's fraudulent conduct, deceptive business practices and improper threats to cancel the parties' March 10, 2020 agreement" and related purchase orders. (*Id.* at 8.) This argument is misplaced; the analysis of the validity of a forum-selection clause is distinct from that of the validity of the underlying contract. Claims of fraudulent inducement or duress to enter into a contract generally are insufficient to avoid a forum-selection clause; rather, a party must show that the clause *itself* was a product of such unconscionable means. *Stifel, Nicolaus & Co. v. Lac du Flambeau Band of*

---

[2] The Agreement contains a choice-of-law provision that designates Massachusetts law, (Agreement at 9, § 27.1), but neither party argues that the Court should apply Massachusetts law in its analysis. At first glance, it would seem that the Court should do so, under *Jackson v. Payday Financial, LLC*, 764 F.3d 765 (7th Cir. 2014). There, the Seventh Circuit held that, where a contract contains a choice-of-law provision, a federal court sitting in diversity should use the law designated in that provision to determine the validity of the contract's forum-selection provision. But a close reading of *Jackson*, which did not involve a § 1404(a) motion, reveals that its holding is limited to situations where there is no "controlling federal statute," 764 F.3d at 774. *See Hurford Glob., LLC v. ROM Techs., Inc.*, No. 20-CV-484-JPG, 2020 WL 6487514, at *3 (S.D. Ill. Nov. 4, 2020). Even if *Jackson* were applicable, however, the analysis of the validity of the forum-selection clause would be the same. *See Bagg v. HighBeam Rsch., Inc.*, 862 F. Supp. 2d 41, 45 n.3 (D. Mass. 2012) (citing *Doe v. Seacamp Ass'n*, 276 F. Supp. 2d 222, 224 (D. Mass. 2003) ("[F]ederal common law and Massachusetts law treat forum selection clauses identically.") (internal punctuation and citation omitted)).

3

*Lake Superior Chippewa Indians*, 807 F.3d 184, 199 (7th Cir. 2015) ("[T]he fact that a contract may have been procured by fraud does not negate the validity of a forum selection clause; instead, we look to whether a forum selection clause *itself* was procured by fraud.") (internal punctuation omitted); *Stephan v. Goldinger*, 325 F.3d 874, 879 (7th Cir. 2003); *Schwarz v. Sellers Mkts., Inc.*, 812 F. Supp. 2d 932, 937 (N.D. Ill. 2011) (noting that a sophisticated business party cannot avoid a forum-selection clause by claiming to have been the victim of fraud or overreaching); *Miglin v. Mellon*, No. 07 C 6863, 2008 WL 2787474, at *1 (N.D. Ill. July 17, 2008) (noting that forum-selection clauses are enforced even when a party alleges that the contract containing the clause is void or unenforceable). Midwest's arguments pertain to the Agreement as an entirety, not the forum-selection clause in particular.[3] Midwest therefore fails to show that enforcement of the clause would be unfair or unreasonable.

Midwest also contends that the forum-selection clause in the Agreement "does not apply to the claims being litigated here" because Midwest alleges "contract formation, and a breach by Breas, that pre-dates" the Agreement, as well as "Breas' fraud committed prior to" the Agreement. (Pl.'s Resp. at 9-10.) Midwest also points out that it seeks to invalidate the Agreement "entirely." (*Id.* at 10.) These arguments miss the mark because Midwest does not fully grapple with the language of the forum-selection clause, which encompasses "[a]ny suit . . . that arises under *or in any way relates to* this Agreement *or the transactions contemplated hereby*." (Agreement at 9, § 27.2 (emphasis added).) Midwest asserts that its claims do not "arise under" the Agreement, but it fails to explain why they do not "relate[] to" it or to the transactions it contemplates. Count V of the complaint, in which Midwest seeks a declaratory judgment invalidating the Agreement, undoubtedly relates to that contract, as do Midwest's other four claims. In Counts I and II, Midwest alleges breach of the purported March 2020 oral agreement, under the Uniform Commercial Code, or, in the alternative, common-law breach of oral contract. These claims relate to the transactions contemplated by the Agreement, that is, Midwest's purchase of ventilators from Breas, and they relate to the Agreement itself. Indeed, Midwest specifically refers to the Agreement in Counts I and II. (Compl. ¶¶ 114, 121 (alleging that Breas breached the March 2020 oral agreement by "[u]nilaterally attempting to change the material terms of the parties' agreement, by requiring [Midwest] to execute its purported Distribution Agreement, under duress").) Counts III and IV, which are for statutory and common-law fraud, also relate to the Agreement. In Count III, Midwest alleges that Breas "suppressed, omitted, and/or failed to communicate information" to Midwest and engaged in "price gouging" and "unfair practices" in violation of the Illinois Consumer Fraud Act, "with the intent to deceive [Midwest] about the nature of the parties' agreement, and to cause [Midwest] to enter into subsequent agreements that changed the material terms of the parties' March 10, 2020 agreement." (*Id.* ¶¶ 127-28, 130.) In Count IV, Midwest asserts that Breas "fraudulently induced" Midwest to execute the Agreement. (*Id.* ¶ 141.) Moreover, the temporal distinction Midwest draws—that the fraud allegedly occurred before the execution of the Agreement—is immaterial. "[A] dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement,

---

[3] The Court also notes that duress does not exist merely where consent is secured by hard bargaining positions or the pressure of difficult financial circumstances. *CIT Grp./Credit Fin. Inc. v. Lott*, No. 93 C 548, 1993 WL 157617, at *2 (N.D. Ill. May 13, 1993).

4

or fraudulent performance." *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004); *see also Pomerantz v. Hard Rock Cafe Franchise Grp., LLC*, No. 18 C 5470, 2020 WL 6447306, at *4 (N.D. Ill. Nov. 3, 2020) (when a dispute is "fundamentally related" to a contractual agreement, the terms of the contract, including a forum-selection clause, govern the dispute, even if the plaintiff brings claims sounding in tort).

Having determined that the forum-selection clause in the Agreement is valid and enforceable and encompasses the claims in this suit, the Court will follow the transfer analysis set out in *Atlantic Marine*, 571 U.S. at 63-65. A valid forum-selection clause requires district courts to adjust the usual § 1404(a) approach in three ways, two of which are relevant here. First, the plaintiff's choice of forum receives no weight, and the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Id.* at 63-64. Second, the Court does not consider arguments about the parties' private interests; the only relevant factors concern the public interest. *Id.* at 64; *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018). "[B]ecause those factors are rarely strong enough to override the parties' preselected forum, the practical result is that forum-selection clauses should control except in unusual cases." *Mueller*, 880 F.3d at 894 (internal punctuation omitted).

The public-interest factors typically considered in determining whether to transfer a case under § 1404(a) are docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020). The first factor, docket congestion and likely speed to trial, weighs slightly in favor of transfer. One forum is speedier for cases that are resolved short of trial, and the other is speedier for cases that are tried. According to the most recent data, the median time from filing to disposition for civil cases in the District of Massachusetts is 9.1 months, compared with 21.3 months[4] in the Northern District of Illinois, but the median time from filing to trial for civil cases in the District of Massachusetts is 36.4 months, compared with 35.2 months in the Northern District of Illinois. *See* Table C-5, U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending December 30, 2020, https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2020/12/31. If the case is transferred, and it is resolved short of trial as are most civil cases, the parties likely could have a more expeditious resolution in Massachusetts. As for each court's relative familiarity with the relevant law, this factor weighs only slightly in favor of the instant forum, if at all. Midwest argues that this court is "unquestionably" more familiar with the Illinois Consumer Fraud Act and Illinois common law, (Pl.'s Resp. at 14), but the Supreme Court and the Seventh Circuit have both emphasized that "federal judges routinely apply the law of a

---

[4] This figure may be an aberration for this district, because for the reporting period just three months prior, it was 10.6 months. *See* Table C-5, U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2020, https://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2020.pdf.

State other than the State in which they sit," *Ryze*, 968 F.3d at 709 (quoting *Atlantic Marine*, 571 U.S. at 67).  Furthermore, Midwest fails to identify any features of relevant Illinois law that are arcane or unique such that this Court's experience with it would have much significance.  The final two factors, the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy, are neutral.  Midwest is located in Illinois, whereas Breas is located in Massachusetts.  Midwest maintains that Illinois has a closer relationship to the allegations of its complaint, because it was the "victim" of Breas's conduct, but both parties allege wrongdoing by the other in their business relationship.  Midwest has failed to show that this case involves "extraordinary circumstances," *Atlantic Marine*, 571 U.S. at 62, such that the parties' choice of forum should not be given controlling weight.

Accordingly, because the parties agreed to a valid and mandatory forum-selection clause that specifies the United States District Court for the District of Massachusetts and encompasses the parties' claims, and because Midwest has failed to establish that transfer to the District of Massachusetts is unwarranted under the public-interest factors, the Court will grant defendant's motion to transfer this action under 28 U.S.C. § 1404(a).

As a final matter, the Court must address Midwest's motion to strike two items Breas submitted with its reply brief—the declarations of Scott Barth, Breas's respiratory account manager, and Ian Liu, its general counsel.  Because the Court did not rely on or consider these documents in deciding the motion to transfer, the motion to strike will be denied as moot.

## CONCLUSION

Defendant's motion to transfer this action to the United States District Court for the District of Massachusetts [10] is granted.  Plaintiff's motion to strike defendant's affidavits [17] is denied as moot.  This action is transferred to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).  The Clerk of Court is directed to effectuate the transfer forthwith.  Civil case transferred and terminated on this court's docket.

**DATE:**  May 24, 2021

**Hon. Ronald A. Guzmán**
**United States District Judge**